Wright, J.
The action was by a father for debauching his daughter, The testimony of the daughter was wholly relied on to establish a case against the defendant. She testified, in substance, that in the latter part of April, 1851, the defendant, who had boarded with the plaintiff about three weeks, had sexual intercourse with her. He had attempted it a few days previously, but the parties were interrupted by another boarder entering the room. These were the only occasions of sexual connection, and were not followed by pregnancy, nor was any physical illness induced thereby. The defendant continued to board with the plaintiff for a week after the last connection. The daughter did not disclose her criminality until nearly three months afterwards, and then on the importunity of her mother, publicity having been given to the transaction by Miles, the boarder, who interrupted the first intercourse. The mother and other members of the family talked to her a great deal, and threatened a prosecution of the defendant. Then it was that the daughter testified that she first took to her room, and kept it for a week or more, being unable to work about the house as she had been accustomed to do. She did not feel so wretched about the wrong until she saw how it made her parents grieve and the .light in which it was regarded by her friends. Shortly after this temporary illness, the present suit was instituted. On the ease thus made, the court refused to nonsuit the plaintiff, and a verdict was subsequently rendered against the defendant. The nonsuit was applied for on the ground that the plaintiff had not proved a technical loss of service; and the judge instructed the jury that, in coming to a conclusion whether a loss of service had been sustained, they were not confined to immediate, direct physical injury to the person of the daughter, so as to render her incapable of performing the same amount of service as she otherwise would; but that it was sufficient if, as was charged in this case, the daughter, on the fact of her sin becoming known, in consequence *415 of mortification, remorse, or sense of shame arising therefrom, Became sick and unable to render the service which she was accustomed and would otherwise have performed. The court refused to charge that, to maintain the action, it must be proved either that the plaintiff has sustained some pecuniary damage, by the loss of the service of his child, resulting directly and as a consequence from the act complained of, or that the act complained of has directly impaired her ability to render service when required. The court also, on request, refused to charge that, if the jury should find that the alleged illness of the daughter resulted wholly from a sense of shame at the exposure of her crime, it was not such a loss of service as is required to sustain the action by the father.
A leading question is whether, on the facts presented, the action of seduction is maintainable by the plaintiff. We are of the opinion that it is not. The foundation of the action is the loss of service resulting from the act complained of. The relation of master and servant is assumed to exist, and, as a consequence of the wrongful act, the former has been injured by losing the services of the latter, to which he is entitled. The wrongful act must be the natural and direct cause of the inj ury for which damages are sought, and the damages recoverable its necessary and proximate consequence. When conception and pregnancy ensue from the illicit intercourse, attended by the usual effects upon the mental and physical health, and actual loss of service occurs, there is no difficulty in tracing the injury, for which the action is technically maintainable, as a direct and immediate consequence of the seduction. But here there was no pregnancy, no illness of body or mind incident to the connection, nor did the alleged sexual intercourse affect either the mental or physical health of the daughter. For nearly three months after the act complained of there is no pretence that her health was in any way impaired, or that she was incapacitated thereby from rendering the ser *416 vices about her father’s house that she had been accustomed to perform. Some three months after the transaction, the boarder who had interrupted the parties in their first illicit intercourse published his knowledge of it; the mother proceeded to extort from her daughter a confession of her guilt, and, when extorted, a suit was threatened against the defendant. Then it was that the daughter’s health was in any degree affected so as to incapacitate her for service, or that there is any pretext of an actual loss of service by the father, or. a diminution of the capacity to serve. The testimony, in its utmost latitude, showed this illness to be the mere consequence of the exposure of the daughter’s guilt. Nay, by a fair interpretation of it, I think it shows that, so far from being caused either by the conduct of the defendant or any sense of shame, the illness was in fact occasioned by parental representations of a still further exposure in a legal tribunal with the view of punishing the defendant. Now, conceding that this illness occasioned a loss of service to the father, such loss was not the natural and proximate consequence of the defendant’s act. It did not result as a direct consequence from the sexual and wrongful connection. The illness being caused either by exposure of the daughter’s shame, some three months after the occurrence, or by the representation that the matter was to be brought into court, it was occasioned by the acts of strangers to the original wrong; and the injury arising from such loss of service cannot be imputed to the defendant, nor he held responsible in a civil action. In Boyle v. Brandon (13 Mees. & Wels., 738), which was an action for seduction, it was proved that the defendant had, for a considerable period, lived with the servant in habits of sexual intercourse. It was also proved that this intimacy was afterwards broken off, and that the daughter, in consequence of the abandonment, became ill, and that the plaintiff thereby lost her services. It was held, that the damages were too remote, and that the action would not lie *417 Greenleaf says: “ The damages to be recovered must always be the natural and proximate consequence of the act complained of.” (2 Greenl. Ev., § 256.) The only case that I am aware of at all like the present, where the seduction was not followed by pregnancy, is that of Manvell v. Thomson (2 Carr. & Pa., 303), at nisi paius. But there the mental illness which threatened the overthrow of the physical system was traceable directly to and immediately followed the wrongful act. It was in no way the result of the act of strangers to the original wrong. The case, if not of doubtful authority, is not controlling. I know of no case, in the absence of pregnancy and the illness ordinarily attending it, that has been held to be made out by. showing that when the servant’s shame was published, and a legal prosecution threatened by the parent or master, she became sick from one or both of those causes, ■and incapable of rendering those services which she would otherwise have performed. This would be a reaching, by the courcs, after consequences of the wrongful act to an unjustifiable extent, and stretching the technical ground of a loss of service by the master arising from the sexual intercourse, on which the action of seduction only is maintainable, to an absurdity. It is true that proof of a slight loss of service will be sufficient; but the injury to the parent or master must be shown to be the direct and proximate consequence of the wrongful act complained of. It will not do that, after the servant’s guilt is exposed by others, and a sense of remorse and shame excited, and thereby she becomes ill and rendered temporarily unfit to do menial service, the master shall be held to sustain a loss or injury by an illness arising from such a cause, on which to found an action of seduction.
There were other exceptions that I deem well taken, especially that to the charge of the judge as to the rule of damages; but as we are of the opinion that the action *418 cannot be maintained by the plaintiff, it is unnecessary to examine them.
The judgment must be reversed and a new trial-ordered
All the other judges concurred that on the evidence the plaintiff could not maintain the action; the court did not pass upon the other questions in the case.
Judgment reversed.